UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| JAMES SOROKA, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>EXTENDED STAY, INC., a Delaware corporation; HVM L.L.C. d/b/a EXTENDED STAY HOTELS, a Delaware corporation,<br><br>        Defendants.<br>_____/ | NO. CIV. 2:10-2883 WBS CMK<br><br><u>MEMORANDUM AND ORDER RE:<br>MOTION TO DISMISS</u> |

----oo0oo----

        Plaintiff James Soroka, individually and on behalf of all others similarly situated, brought this action against Extended Stay, Inc. ("Extended Stay"), and HVM L.L.C. d/b/a Extended Stay Hotels ("HVM") arising from Long-Term Lodging Agreements. Plaintiff voluntarily dismissed Extended Stay. HVM moves to dismiss the First Amended Class Action Complaint ("FAC")

1

pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

I.   Factual and Procedural Background

The FAC alleges that Extended Stay's hotels offer occupants "home-like" accommodations for five days or more without the additional services of a "traditional" hotel. (FAC ¶ 16 (Docket No. 9).) Plaintiff alleges that the hotels "may offer only daytime reception," "have limited on-site staff," and "usually have no public areas," such as lounges and breakfast rooms. (Id.) The hotels allegedly offer rooms with kitchens or kitchenettes and do not have bars, restaurants,[1] room service, or daily housekeeping services.[2] (Id. ¶ 17.)

HVM, which manages Extended Stay's hotels, allegedly requires occupants who "rent and/or occupy Extended Stay units as their primary residence" to sign a Long-Term Lodging Agreement ("Agreement"). (Id. ¶ 18.) The term of the Agreement starts at

---

[1] HVM L.L.C. d/b/a Extended Stay Hotels ("HVM") requests that the court take judicial notice of the content of Extended Stay's web site, which lists coffee bars as an offered amenity. (Def. HVM'S Reply to Pl.'s Opp'n to Def.'s Mot. to Dismiss Pl.'s First Amend. Class Action Compl. at 2 n.2 (Docket No. 25).) A court may take judicial notice of facts "not subject to reasonable dispute" because they are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. The court denies the request for judicial notice because the content of HVM's web site is not "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Id.

[2] The Long-Term Lodging Agreement ("Agreement") states: "Lodger acknowledges that no Housekeeping service will be provided for the Room during the Term of this Lodging Agreement. If Housekeeping services are desired, a $25 fee per service request will be charged to Lodger." (Gonzales Decl. in Supp. of Def. HVM's Mot. to Dismiss Pl.'s First Amend. Class Action Compl. ("Gonzales Decl.") Ex. A at 3 (Docket No. 12).)

2

3:00 p.m. on the "Commencement Date" and terminates 30 days after that date at 11:00 a.m.  (Gonzales Decl. in Supp. of Def. HVM's Mot. to Dismiss Pl.'s First Amend. Class Action Compl. ("Gonzales Decl.") Ex. A at 1-2 (Docket No. 12).)  Thus, the exact term of the Agreement is twenty-nine days and twenty hours.  The Agreement provides for a renewal for the same term.  (Id. Ex. A at 1.)  HVM allows a resident to either sign a new Agreement or an addendum to an existing Agreement.  (FAC ¶ 21.)

The Agreement provides that the "[l]odger" will "occupy and use" the room as a "dwelling unit" and that HVM reserves the right to transfer the lodger to another room on 48 hours notice and to enter the room once per week to make inspections and provide necessary repairs.  (Gonzales Decl. Ex. A at 1-2.)  The Agreement describes the legal relationship of the parties as hotel manager-guest and states that it is not the intention of the parties to create a lease or enter into a landlord-tenant relationship and that it is their intention to create a transient occupancy:

> TRANSIENT OCCUPANCY: Unless otherwise superseded by the laws of this State, the Lodger acknowledges that he/she is not a tenant but merely a lodger occupying the Room on a transient basis.  The parties specifically acknowledge and agree that their relationship is that of hotel manager and guest and that it is not the intention of the parties to create a lease within the meaning of the laws of this State.
>
> NO LANDLORD/TENANT RELATIONSHIP: Unless otherwise superseded by the laws of this State, the parties acknowledge and agree that the legal relationship between HVM and the Lodger is that of a hotel manager and guest and that it is not the intention of the parties to create a lease within the meaning of the laws of this State.  No landlord-tenant relationship is intended to be created by this Agreement.

(Id.)  The FAC alleges that HVM informs its long-term residents

3

that it offers them an "affordable alternative to apartment living" and has referenced the Agreement as a "lease" in its "Long-Term Lodging program." (FAC ¶ 24 (internal quotation marks omitted in first two quotations).)

The Agreement places numerous obligations on the lodger with respect to the condition of the room, including maintaining the condition of the room that existed when the lodger took occupancy, using and operating electrical and plumbing fixtures properly, and disposing of trash. (Gonzales Decl. Ex. A at 2.) The "lodging fee" must be paid every 30 days and HVM reserves the right to increase the lodging fee upon expiration of the term, if permitted by the laws of "this State." (Id. Ex. A at 1.)

The Agreement may be terminated with 30 days of written notice, unless superseded by the laws of "this State." (Id. Ex. A at 2.) With respect to holdovers, the Agreement provides that the lodger will pay the lodging fee during the holdover period and HVM reserves the right to deny access to the room at any time, unless superseded by the laws of "this State." (Id.) The Agreement defines a lodger's default under the Agreement as including the failure to pay the lodging fee when due. (Id. Ex. A at 4.) In the event of default, HVM reserves the right to take all actions permitted or required "by law," including utilizing self-help measures or issuing notices to the lodger, such as a Notice to Pay Rent or Quit or a Notice of Termination of Tenancy. (Id.)

Plaintiff has allegedly lived at an Extended Stay hotel in Sacramento for over five years and the hotel allegedly has not charged him a room tax. (FAC ¶¶ 28-29.) The hotel is allegedly

4

his primacy residence. (Id. ¶ 28) Plaintiff alleges that "[t]o remain in his room, Extended Stay requires [him]" to sign a new Agreement or addendum every 30 days. (Id. ¶ 30.) In the past five years, plaintiff has "experienced numerous changes in rent and the date on which his rent is due has rotated with each" new Agreement or addendum. (Id. ¶ 31.) Plaintiff allegedly "has been threatened with removal from the Extended Stay and has been locked out of his room with his belongings inside without notice or the benefit of an unlawful detainer process" over 95 times in the past five years, most recently three weeks after he initiated this action. (Id. ¶ 32.) The FAC implies that HVM allegedly locked plaintiff out of his room following plaintiff's failure to timely pay his "lodging fee" or to sign a new Agreement or addendum prior to the expiration of the term. The FAC makes similar allegations about threats and lockouts following failure to timely pay or renew with respect to other long-term residents. (Id. ¶ 27.)

On October 26, 2010, plaintiff filed this action against Extended Stay and HVM. The FAC alleges violations of California Civil Code section 1940.1, California Civil Code section 789.3, and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210. HVM now moves to dismiss the FAC pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (Docket No. 11.)

II. Discussion

To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

(2007).  This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009), and where a complaint pleads facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  Id. (quoting Twombly, 550 U.S. at 557).  In deciding whether a plaintiff has stated a claim, the court must assume that the plaintiff's allegations are true and draw all reasonable inferences in the plaintiff's favor.  Usher v. City of L.A., 828 F.2d 556, 561 (9th Cir. 1987).  However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation mark omitted).

"When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond."  United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).  The Ninth Circuit has held, however, that a court may "consider certain materials--documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice--without converting the motion to dismiss into a motion for summary judgment."  Id. at 909.  Even if the plaintiff has not attached a document to the complaint, the document "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the

6

document forms the basis of the plaintiff's claim." Id. at 909.

Here, HVM has attached to the declaration of the general manager of the Extended Stay America Sacramento-Elk Grove hotel plaintiff's Long-Term Lodging Agreement providing for a term starting on October 30, 2009, Amendment to Lodging Agreement providing for a term starting on July 22, 2010, and Amendment to Lodging Agreement providing for a term starting on August 21, 2010. (Gonzales Decl. Ex. A.) In the FAC, plaintiff refers to, describes, and quotes from the Agreement and addendum. (See FAC ¶¶ 1, 3-4, 6, 10, 18, 20-21, 23-27, 30, 46-47.) HVM in its motion and plaintiff in its opposition cite and quote from the declaration's exhibit. However, neither party takes the position that the exhibit is representative of every Agreement and addendum signed by plaintiff in the past five years every 30 days. The exhibit even contains language in a footer indicating that it was revised in 2009, at least three years after plaintiff first signed an Agreement or addendum. (See Gonzales Decl. Ex. A 1-7.) The court will consider the exhibit, while recognizing that neither party stipulates that it is representative of every Agreement and addendum signed by plaintiff.[3]

A.  Claim for Violation of California Civil Code Section 1940.1

California Civil Code sections 1940 through 1956 provide numerous statutory rights to "all persons who hire

---

[3] Because the parties have not stipulated that the exhibit is representative, the court declines to apply the Agreement's choice-of-law provision, which prescribes South Carolina law for the construction of the Agreement. (Gonzales Decl. Ex. A at 4.)

7

dwelling units located within this state including tenants, lessees, boarders, lodgers, and others, however denominated."[4] Cal. Civ. Code § 1940(a). However, section 1940 provides for three exceptions to the definition of "persons who hire." First, "persons who hire" does not include a person who maintains "[t]ransient occupancy in a hotel, motel, residence club, or other facility when the transient occupancy is or would be subject to tax under Section 7280 of the Revenue and Taxation Code [because the occupancy is 30 days or less]." Id. § 1940(b)(1); Cal. Rev. & T. Code § 7280. Second, the definition does not include a person who maintains a transient occupancy of 30 days or less when the person fails to pay room or related charges. Cal. Civ. Code § 1940(b)(1). Third, the definition does not include a person who maintains an occupancy at a hotel or motel where an innkeeper "retains a right of access to and control of the dwelling unit" and the hotel or motel "provides or offers all of the following services to all of the residents," Cal. Civ. Code § 1940(b)(2) (emphases added):

> (A) Facilities for the safeguarding of personal property pursuant to Section 1860.

---

[4] Plaintiff requests that the court take judicial notice of a guide, available online, published by California Department of Consumer Affairs entitled "California Tenants: A Guide to Residential Tenants' and Landlords' Right and Responsibilities," which states that "generally" lodgers and residents of hotels have the same rights as tenants. (Req. for Judicial Notice in Supp. of Pl.'s Opp'n to Def. HVM Mot. to Dismiss Ex. A (Docket No. 21).) Plaintiff also requests that the court take judicial notice of a webpage within the Santa Cruz County District Attorney's Office official web site, under the Consumer Affairs-Tenant Landlord link, which advises landlords not to forcibly remove someone from a hotel or motel unless they are certain that he is a lodger, not a tenant. (Id. Ex. B.) Without more information from plaintiff, the court denies the requests because the guide and webpage do not appear to be factually relevant.

```
          (B) Central telephone service subject to tariffs covering
              the same filed with the California Public Utilities
              Commission.
          (C) Maid, mail, and room services.
          (D) Occupancy for periods of less than seven days.
          (E) Food service provided by a food establishment, as
              defined in Section 113780 of the Health and Safety Code,
              located on or adjacent to the premises of the hotel or
              motel and owned or operated by the innkeeper or owned or
              operated by a person or entity pursuant to a lease or
              similar relationship with the innkeeper or person or
              entity affiliated with the innkeeper.
```

Id. § 1940(b)(2)(A)-(E).

Plaintiff has alleged sufficient facts from which to plausibly infer that he does not fall within any of the three exceptions to the definition of "persons who hire." First, while he has signed a new Agreement or addendum every 30 days and the Agreement states the parties' intention to create a transient occupancy, plaintiff allegedly has lived at the hotel for over five years and it is his primary residence. HVM allegedly has not charged him a room tax. It is plausible that plaintiff was not a transient occupant subject to tax under section 7280 of the Revenue and Taxation. See id. § 1940(b)(1); Cal. Rev. & T. Code § 7280. Second, for the same reasons, it is plausible that plaintiff did not maintain a transient occupancy and fail to pay room or related charges. See Cal. Civ. Code § 1940(b)(1). Third, at this stage, it appears plausible that HVM does not offer or provide "all of the following services to all of the residents": facilities for safeguarding property, central telephone service, maid service, mail service, room service, occupancy of periods for seven days or less, and food service provided by a food establishment. See Cal. Civ. Code § 1940(b)(2)(A)-(E).

Section 1940.1 prohibits certain conduct by a "residential hotel" with respect to section 1940's definition of "persons who hire." Section 1940.1 provides:

> (a) No person may require an occupant of a residential hotel, as defined in Section 50519 of the Health and Safety Code, to move, or to check out and reregister, before the expiration of 30 days occupancy if a purpose is to have that occupant maintain transient occupancy status pursuant to paragraph (1) of subdivision (b) of Section 1940.

Id. § 1940.1(a). A "residential hotel" is "any building containing six or more guestrooms or efficiency units, as defined by Section 17958.1, intended or designed to be used, or which are used, rented, or hired out, to be occupied, or which are occupied, for sleeping purposes by guests, which is also the primary residence of those guests." Cal. Health & Safety Code § 50519. Evidence that an occupant was required to check out and reregister creates a rebuttable presumption, affecting the burden of producing evidence, of the prohibited purpose. Cal. Civ. Code § 1940.1(a). Section 1940.1 provides for a civil penalty of $500 and attorney's fees to the prevailing party if a residential hotel violates the statute. Id. § 1940.1(b).

The Agreement here expires four hours short of the thirtieth day, and plaintiff was allegedly required to sign a new Agreement or addendum to remain at the hotel, which has been his primary residence for over five years. Even if plaintiff's belongings remained in his room, plaintiff has alleged sufficient facts from which to reasonably infer that HVM required him to "move" or "to check out and reregister" before the expiration of 30 days of occupancy with a "purpose" of "maintain[ing] transient occupancy status pursuant to paragraph (1) of subdivision (b) of

10

Section 1940." Id. § 1940.1(a). Accordingly, the court will deny HVM's motion to dismiss this claim. The court makes no determination as to whether plaintiff's remedy for a violation of section 1940.1 is limited to a $500 civil penalty or includes other statutory rights in California Civil Code sections 1940 through 1956.

    B.   <u>Claim for Violation of California Civil Code Section 789.3</u>

Plaintiff has also brought a claim for unlawful self-help. This claim is based on a statutory right that is separate from the numerous statutory rights under California Civil Code sections 1940 through 1956 afforded to "all persons who hire dwelling units located within this state including tenants, lessees, boarders, lodgers, and others, however denominated." Cal. Civ. Code § 1940(a). California Civil Code section 789.3 provides in relevant part:

> (b) In addition, a landlord shall not, with intent to terminate the occupancy under any lease or other tenancy or estate at will, however created, of property used by a tenant as his or her residence, willfully:
>   (1) Prevent the tenant from gaining reasonable access to the property by changing the locks or using a bootlock or by any other similar method or device;
>   . . . .

Cal. Civ. Code § 789.3(b)(1).

In addition to only applying to "persons who hire," id. § 789.3(b)(3), which plaintiff has sufficiently alleged, this section only applies to landlord-tenant relationships. Even if a plaintiff falls within the definition of "persons who hire" and is entitled to numerous statutory rights under California Civil Code sections 1940 through 1956, a plaintiff may not bring a

11

private cause of action to collect a $100 civil penalty for unlawful self-help under section 789.3 unless a landlord-tenant relationship exists.  Accordingly, the court must determine whether plaintiff has sufficiently alleged a landlord-tenant relationship.

The distinguishing characteristic of a landlord-tenant relationship is an exclusive possessory interest.

> A "tenant" has exclusive legal possession of premises and is responsible for their care and condition.  A "lodger" has only the right to use the premises, subject to the landlord's retention of control and right of access to them. . . . When premises are under the direct control and supervision of the owner and rooms are furnished and attended to by him, he or his servants retaining the keys to them, a person renting such a room is a lodger and not a tenant.[5]

Stowe v. Fritzie Hotels, 44 Cal. 2d 416, 421 (1955); see, e.g., Erwin v. City of San Diego, 112 Cal. App. 2d 213, 217 (4th Dist. 1952) ("Where, as here, the evidence shows that the building was known as the 'Leland Hotel'; that it was under the control and supervision of the plaintiffs; that the rooms were furnished and attended to by plaintiffs and that they retained the keys thereto, renters of such rooms were and are lodgers and not tenants.").

The interpretation of an agreement "to determine whether it is a lease, a license or another form of interest is often a subtle pursuit." Qualls v. Lake Berryessa Enterps., Inc., 76 Cal. App. 4th 1277, 1283 (1st Dist. 1999).  "At the most rudimentary level, '[w]hether an agreement for the use of property constitutes a license or a lease generally is determined

---

[5] To the extent that guests and lodgers are different, the difference is not relevant here.

12

by the nature of the possession granted.'" Id. (quoting 6 Miller & Starr, California Real Estate § 18:5, at 14 (2d ed. 1989)) (alteration in original).  "If the contract gives exclusive possession of the premises against all the world, including the owner, it is a lease; if it merely confers a privilege to occupy the premises under the owner, it is a license." Id. (internal quotation marks omitted).

The meaning of a contract depends on the parties' expressed intent, using an objective standard. Golden W. Baseball Co. v. City of Anaheim, 25 Cal. App. 4th 11, 21 (4th Dist. 1994); see, e.g., Qualls, 76 Cal. App. at 1284-85 (holding that county gave mere license to mobile home owners); Golden W. Baseball, 25 Cal. App. 4th at 34 (holding that city conveyed less than leasehold in stadium to baseball team owner).  When the agreement is reduced to writing, the court should determine the intent of the parties, if possible, based on the writing alone. Cal. Civ. Code § 1639.  Nonetheless, "[e]ven if the written agreement is clear and unambiguous on its face, the trial judge must receive relevant extrinsic evidence that can prove a meaning to which the contract is 'reasonably susceptible.'" Brobeck, Phleger & Harrison v. Telex Corp., 602 F.2d 866, 871 (9th Cir. 1979) (discussing California law); see, e.g., Golden W. Baseball, 25 Cal. App. 4th at 21 (considering extensive extrinsic evidence to determine intent).  If the court finds that "the language of the contract is not reasonably susceptible of interpretation and is unambiguous" after considering preliminary evidence, "extrinsic evidence cannot be received for the purpose of varying the terms of the contract." Brobeck, 602 F.2d at 871.

13

             Here, the Agreement describes the relationship as hotel manager-guest and states their intent that the Agreement should not constitute a lease and their intent not to enter into a landlord-tenant relationship.  The Agreement also only expressly grants the right to "use" the room and reserves HVM's right to access the room once per week and transfer plaintiff to another room with 48 hours notice.  It is certainly not obvious that it was the objective intent of the parties to enter into a lease.  See Golden W. Baseball, 25 Cal. App. at 21.

             Nonetheless, the FAC alleges sufficient facts from which to plausibly infer that the parties objectively intended that the Agreement constitute a lease.  The FAC alleges that HVM informs its long-term residents that its rooms are an "affordable alternative to apartment living" and has referenced the Agreement as a "lease" in its "Long-Term Lodging program."  With respect to HVM's rights when a lodger defaults, the Agreement itself uses terms found in a lease.  The Agreement states that HVM reserves the right to take all actions permitted or required by law, including utilizing self-help measures or issuing notices to the lodger, such as a Notice to Pay "Rent" or Quit or Notice of Termination of "Tenancy."  Moreover, plaintiff has lived at the hotel for over five years.  While HVM may ultimately prove that the parties did not intend that the Agreement constitute a lease, the Agreement is "reasonably susceptible" to interpretation.  Brobeck, 602 F.2d at 871; see also In re Yahoo! Litig., 251 F.R.D. 459, 472 n.8 (C.D. Cal. 2008) (stating that parties are not "required to set forth extrinsic evidence in support of their alternative interpretation of contract terms prior to the

14

commencement of discovery").

Plaintiff's claim for violation of section 789.3 depends only in part on sufficiently pleading a landlord-tenant relationship.  HVM must have "[p]revented [him] from gaining reasonable access to the property by changing the locks or using a bootlock or by any other similar method or device," and this conduct must have been done willfully and with "intent to terminate the occupancy under any lease or other tenancy or estate at will, however created, of property used by a tenant as his or her residence."  Cal. Civ. Code § 789.3(b)(1).  Plaintiff alleges that he has been threatened with removal and locked out of his room with his belongings inside over 95 times in the past five years and the FAC implies that HVM locked plaintiff out of his room following plaintiff's failure to timely pay his fee or renew.  These factual allegations are sufficient to plausibly suggest unlawful self-help.  Accordingly, the court will deny HVM's motion to dismiss this claim.

    C.    <u>Claim for Violation of UCL</u>

The UCL prohibits "any unlawful, unfair, or fraudulent business act or practice."  <u>Cal-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.</u>, 20 Cal. 4th 163, 180 (1999).  A plaintiff must state with "reasonable particularity" the facts supporting the statutory elements of the violation.  <u>Khoury v. Maly's of Cal., Inc.</u>, 14 Cal. App. 4th 612, 619 (2d Dist. 1993).  By proscribing "any unlawful" business practice, "section 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable."  <u>Cal-Tech Commc'ns</u>, 20 Cal. 4th at 180 (internal quotation marks

15

1 omitted).  In <u>Cel-Tech Communications</u>, the California Supreme
2 Court held that the UCL "require[s] that any finding of
3 unfairness to competitors under section 17200 be tethered to some
4 legislatively declared policy or proof of some actual or
5 threatened impact on competition."[6]  <u>Id.</u>, 20 Cal. 4th at 186-87.

6         Here, plaintiff brings only one UCL claim and rests it
7 on the unlawful and unfair prongs.  The court has already found
8 that plaintiff has sufficiently pled violations of California's
9 Civil Code.  Accordingly, plaintiff has sufficiently pled a
10 violation of the UCL.  The court will deny HVM's motion to
11 dismiss this claim.

12         IT IS THEREFORE ORDERED that HVM's motion to dismiss
13 the First Amended Class Action Complaint be, and the same hereby
14 is, DENIED.

15 DATED:  February 7, 2011

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

[6]     The law is unsettled as to what constitutes "unfair" as between parties that are not direct competitors.

16